IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 00-41233
SUMMARY CALENDAR
_____


DON KRUEGER CONSTRUCTION CO.,

Plaintiff-Counter Defendant-Appellee,

versus

ALLIANCE STEEL, INC.,

Defendant-Counter Claimant-Appellant.

_____

Appeal from the United States District Court for the
Southern District of Texas, Victoria Division
No. V-98-CV-29
_____

August 7, 2001

Before JOLLY, JONES, and BENAVIDES, Circuit Judges.

PER CURIAM[*]:

Defendant Alliance Steel, Inc. ("Alliance") appeals the district court's award of damages in this breach of contract case involving Alliance's agreement to supply a pre-engineered steel building to Plaintiff Don Krueger Construction Company ("Krueger"). Finding no error in the district court's determination that Krueger

_____

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

reasonably mitigated its damages when it accepted a higher bid after Alliance repudiated the contract, we AFFIRM.

I

In January 1998 Krueger, bidding for a contract to construct an elementary school, solicited bids from subcontractors to construct and provide a steel building for use in construction of the school. Alliance submitted a bid of $459,603; the next lowest bid, submitted by Ceco Builders, was $959,724. Although Krueger had never done business with Alliance, Krueger accepted its bid because it was significantly lower than the other bids received.

At Alliance's request, Krueger sent a letter to Alliance confirming that Alliance had been awarded the contract. That letter also stated that Alliance would be receiving a purchase order for the building within two weeks that was to be signed and returned to Krueger. No objections to this letter were made by Alliance.

Soon after, Alliance sent a letter asking Krueger to sign Alliance's form contract to formalize the agreement in writing. While industry custom provides that the general contractor supplies the subcontractor with a purchase order containing the terms of the agreement, Alliance apparently did not conduct business according to this custom and preferred to utilize its own form contract. Krueger examined Alliance's form contract and discovered some variances between provisions in that contract and the requirements

2

of Krueger's contract with the school district.[1]

After a series of conversations and confrontations during which Alliance refused to sign Krueger's purchase order, Alliance eventually repudiated the contract.[2] Following the breach, Krueger sought substitute bids for steel buildings in order for it to meet the demands of its contract with the school district. Although Krueger received a bid from Mart, Inc. to supply the building for $491,184, Krueger eventually accepted the bid of Mid-West Steel Building Company for $742,264. Krueger did not utilize Mart's bid because Mart was a vendor, not a manufacturer, and was planning to buy a steel building from Alliance and supply it to Krueger. Concerned about Alliance's apparent refusal to accept the terms of Krueger's contract with the school district, Krueger did not accept Mart's bid.

Alliance argued before the district court that Krueger failed to mitigate its damages by accepting the higher bid. The district court ruled that Krueger properly mitigated its damages despite accepting the higher bid because Mart's reputation was unknown and Mart was not going to manufacture the building itself, but rather

---

[1]Specifically, Alliance provided warranties that were more limited than those required by the school district, included different choice of law provisions, and did not include liquidated damages.

[2]The formation of a contract between Krueger and Alliance is undisputed, and Alliance does not appeal the district court's determination that Alliance repudiated the contract on March 6, 1998.

use Alliance's building. The court found that, because Alliance had already acknowledged its refusal to sign Krueger's purchase order without modifications, Krueger acted reasonably when it refused to accept that bid.

## II

Alliance appeals only the district court's finding that Krueger mitigated its damages. Alliance bears the burden of showing that Krueger's mitigation efforts were insufficient. See Bank One, Texas, N.A. v. Taylor, 970 F.2d 16, 29 (5th Cir. 1992).

When evaluating the propriety of cover following a breach of contract, a court should determine "whether at the time and place the buyer acted in good faith and in a reasonable manner, and it is immaterial that hindsight may later prove that the method of cover used was not the cheapest or most effective." Tex. Bus. & Com. Code Ann. § 2.712, cmt. 2. The district court has written a thorough opinion in this case, and we agree with the district court's conclusion that Krueger acted reasonably in its decision to reject Mart's bid. Krueger was unfamiliar with Mart's reputation, while Krueger had prior business dealings with Mid-West, whose bid Krueger eventually accepted. Most importantly, Mart was not even planning to manufacture the building; instead, it intended to purchase Alliance's building, mark up the price, and re-sell it to Krueger. Knowing from prior dealings that Alliance had refused to sign Krueger's purchase order and had not agreed to some of the

4

requirements of the general contract between Krueger and the school district, Krueger made a reasonable choice to pass on Mart's bid.

Under these facts, Alliance has failed to satisfy its burden of showing that Krueger's mitigation efforts were deficient.  The district court's award of damages is therefore

A F F I R M E D .